IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cr. No. 19-592 SWS ) |
| **RICK BENAVIDEZ**, | ) ) |
| Defendant. | ) |

## THE UNITED STATES' SENTENCING MEMORANDUM

The United States submits this sentencing memorandum pursuant to Fed. R. Crim. P. 32 and respectfully recommends that this Court sentence the defendant, Rick Benavidez (hereinafter, "Defendant"), to imprisonment for a term of 63 months followed by five years of supervised release and $325 in special penalty assessments. The United States also requests a restitution hearing within 90-day of sentencing to determine the losses of the various victims in this case, pursuant to 18 U.S.C. § 3664(d)(5).

As explained in further detail below, Defendant acted as a leader and organizer in a sophisticated auto loan fraud scheme with an intended loss to financial institutions of more than $361,000, including the specific bank fraud underlying the offenses of conviction. Defendant also engaged in other relevant criminal conduct by directing a second, uncharged auto scheme of similar sophistication with an intended loss of more than $1.2 million to banks and credit unions.

Astonishingly, Defendant has persisted in his pattern of reprehensible conduct while this case has been pending. Specifically, Defendant has committed several more

federal offenses by filing false documents with the federal government – many of them in direct violation of a court order. He has also provided false documents to officers for U.S. Probation and Pretrial Services and lied to those officers - including one instance leading to the revocation of his conditions of release last week. Given these circumstances, Defendant deserves a substantial term of imprisonment. The sentence recommended by the United States - which is at the high end of the agreed-upon range in Defendant's Rule 11(c)(1)(C) plea agreement - is sufficient but not greater than necessary to provide just punishment for his offenses, promote respect for the law, and comply with the other purposes of federal sentencing. *See* 18 U.S.C. § 3553.

I.     RELEVANT FACTS AND PROCEDURAL HISTORY

On April 29, 2022, Defendant entered a plea of guilty to the indictment, charging him with two counts of bank fraud, in violation of 18 U.S.C. § 1344, and one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. *See* Doc. 209-10. Defendant also pleaded guilty to an information charging him with one count of making fraudulent returns, statements, or other documents, in violation of 26 U.S.C. § 7207. *See id*. In Defendant's plea agreement, he admitted the following facts:

> From on or about April 18, 2013 to on or about May 3l, 2013, I conspired with Damian Maron and Ramon Saenz to submit fraudulent documentation, including fraudulent pay stubs, to financial institutions in order to receive automobile loans. Neither Saenz, Maron, nor I had any intention of using the proceeds of these loans to finance the purchase of any automobile. Maron and I convinced Saenz to apply for auto loans from Sandia Laboratory Federal Credit Union and New Mexico Educators Federal Credit Union using the title for the same car, a 2007 Mercedes S Class, for both loans. Both credit unions were insured by the National Credit Union

Administration through the National Credit Union Share Insurance Fund at the time the loans were applied for and approved, meaning that both credit unions were "financial institutions" as defined in l8 U.S.C. § 20(2).

On May 30, 2013, and May 31, 2013, at my and Maron's direction, Saenz went to the credit unions and submitted fraudulent pay stubs, which I provided to him, as supporting documents associated with auto loan applications. The fraudulent pay stubs I provided to Saenz overstated his income and therefore increased the likelihood that he would be approved for loans. The false pay stubs supported Saenz's representations that he earned an annual income of $85,000 when in reality he earned far less - only roughly $8,000 in all of 2013. I knew Saenz did not actually earn the income represented on the fraudulent pay stubs and I knew that the pay stubs were false. The credit unions, which are located in Bernalillo County, both approved loans to Saenz based on the false income documentation.

The car Saenz purported to be financing the purchase of via the auto loans was not actually for sale and neither Saenz, Maron, nor I actually purchased the car or ever had any intention of purchasing it. Instead, the money was disbursed to "Automotive Express Inc.," a fictitious dealership, and then distributed to Saenz, Maron, and me. Saenz, Maron, and I each kept some of the money from the loans and used the money for our own personal benefit. Saenz eventually defaulted on the loans. The above-described scheme to defraud Sandia Laboratory Federal Credit Union and New Mexico Educators Federal Credit Union was part of a larger conspiracy using multiple "straw applicants" to obtain similar auto loans based on false or fraudulent information. The total amount of loans disbursed by financial institutions as part of this scheme was $359,662.97.

I also took part in an additional loan scheme, involving Willie Lee Edwards and other individuals, that is not charged in the indictment or information referenced in this document. The total loan amount applied for as part of this separate scheme was $1,154,493.42, of which $999,993.42 was disbursed by financial institutions.

After being charged with conspiracy and bank fraud in relation to the first of the above-described schemes, I submitted a false document to the Internal Revenue Service ("IRS") purporting to designate the assigned U.S. District Court Judge, William P. Johnson, as my fiduciary. I submitted this document to the IRS on or about December 10, 2019. I knew that the fiduciary designation was false because Judge Johnson did not agree to it

and he is not, and never has been, my legal fiduciary.
Doc. 209 at 6-8.

In Defendant's plea agreement, he waived his right to appeal his conviction and any sentence in conformity with his plea agreement. *Id*. at 10-11.   Defendant further agreed to make restitution not only for the offenses of conviction, but also for "all of [his] … criminal conduct related to this case." *Id*. at 10-11.   He also agreed to tender $325 to the Court in special penalty assessments. *Id*. at 12-13.

On July 29, 2022, United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR") to the Court and the parties.  Doc. 224.  The PSR summarized Defendant's involvement in the three offenses of conviction and other relevant conduct. *Id.* at 5-8.  The PSR noted that Defendant's criminal history consisted of a conviction in 2001 for driving while intoxicated and a conviction in 2003 for conspiracy to commit cocaine trafficking. *Id*. at 12-13.

The PSR set Defendant's base offense level at 7, pursuant to U.S.S.G. § 2B1.1(a)(1), and applied a sixteen-level increase, pursuant to U.S.S.G. § 2B1.1(b)(1)(I), based on a loss amount of greater than $1,500,000. *Id*. at 10.  The PSR also applied a two-level increase for sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(10)(C),  and a four-level increase, pursuant to U.S.S.G. § 3B1.1](a), for acting as a leader or organizer. *Id*. at 10-11.  In an addendum to the PSR disclosed on August 23, 2022, the USPO also applied a two-level increase, pursuant to U.S.S.G. § 3C1.1, for obstruction of justice and denied Defendant any credit for acceptance of responsibility, pursuant to § 3E1.1(a).

Doc. 243 at 3. Accordingly, Defendant's combined adjusted offense level for all of his offenses of conviction is 32 and his guideline imprisonment range is 121-151months. *Id*.

Notably, the PSR did not identify any factors that might warrant a departure or variance outside the advisory guideline system. *Id*. at 20-21. Indeed, the PSR concluded "a sentence within the advisory guideline range may be warranted in this case." *Id*. at 20.

## II.    APPLICABLE LAW

The Court must impose a sentence within statutory parameters that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing, as set forth in 18 U.S.C. § 3553(a). In fixing a sentence, the Court must consider such factors as the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). The Court should also take into account the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter other criminal conduct, and protect the public from further crimes by the defendant. 18 U.S.C. § 3553(a)(2). The Court must also consider the advisory Guidelines promulgated by the United States Sentencing Commission as they apply to the defendant in the particular case. *See* 18 U.S.C. § 3553(b)(1). Indeed, correctly calculating the Guidelines should be the starting point when determining an appropriate sentence. *United States v. Joe*, 696 F.3d 1066, 1073 (10th Cir. 2012); *United States v. Kieffer*, 681 F.3d 1143, 1164 (10th Cir. 2012).

## III.   UNITED STATES' RECOMMENDATION

The United States recommends that the Court sentence Defendant to imprisonment

for a term of 63 months followed by five years of supervised release and $325 in special penalty assessments. The United States also requests the Court order Defendant to make restitution to various financial institutions for their monetary losses to be determined at a hearing pursuant to 18 U.S.C. § 3664(d)(5).

Defendant deserves to be punished with a substantial term of imprisonment based on the serious nature and circumstances of his offenses and certain negative aspects of his personal history and characteristics. *See* 18 U.S.C. § 3553(a)(1). Defendant committed the offenses of conviction as part of a fraud scheme targeting credit unions in Albuquerque. In doing so, Defendant took advantage of these financial institutions' vulnerabilities as community banks that place trust in their customers as part of their business model in competing with larger national and international banking conglomerates. The essential details of the scheme are set forth in the PSR. Additional details can be found in the sworn testimony of Ramon Saenz attached as Exhibit 1 and in the United States' sealed supplemental sentencing memorandum to be filed separately.

Defendant also committed a second auto loan fraud scheme with an intended loss of $1,154,483.42, as he admitted in his plea agreement. Doc. 209 at 7. Further details of this scheme are set forth in the PSR, Doc. 224 at 7-9, and in the sealed supplemental memorandum.

In committing his crimes and other relevant conduct, Defendant not only victimized the financial institutions for an intended loss of more than $1.6 million, he also victimized the loan applicants he recruited to play lower-level roles in the scheme by

6

taking out the loans in their names, rather than his. To be sure, these loan applicants committed fraud of their own by lying to the banks to obtain the auto loans without any intention of actually driving the vehicles or repaying their debts. Nevertheless, these loan applicants were left financially harmed in a way Defendant was not because their names and signatures were on the loan documents.[2] Based on Defendant's pattern of sophisticated deception in this case, it is obvious that he designed these loan schemes like this to avoid creating a paper trail connecting him to the illegal activity and he specifically meant to make it much more difficult for the lenders to hold him personally responsible for their losses. Like many other bosses in organized criminal activity, he wanted "buffers" between him and the co-conspirators he enlisted to do the dirty work for him.

The Defendant's term of imprisonment in this case should also be substantial enough to deter him from future crimes, especially in the financial arena, and to protect the public from his dangerous criminal tendencies, including his propensity to lie pathologically and mastermind elaborate schemes founded on the exploitation of trust. *See* 18 U.S.C. § 3553(a)(2). Defendant committed these crimes as a previously convicted drug trafficker who failed to rehabilitate himself into a law-abiding citizen. Doc. 224 at

---

[2] At the sentencing hearing, the United States intends to present evidence from one loan applicant, Melony Hernandez, about how Defendant and Maron exploited the pre-existing financial hardship of her and her husband by convincing them to hire the defendants for "credit repair" services and then entangling them in this auto loan scheme which left Ms. Hernandez and her husband in worse financial difficulty. A report summarizing a prior interview of Ms. Hernandez by the FBI is attached as Exhibit 2.

12-13.  Defendant has also previously failed to pay child support as ordered by family court.  *Id*. at 14.

After Defendant's original arrest in this case, he continued to commit criminal offenses by filing false documents with the IRS, as he admitted to in his plea agreement, and making false statements in bankruptcy court, as detailed in a complaint filed by Jaime A. Pena, a trial attorney for the Office of the U.S. Trustee.  This complaint is attached as Exhibit 3.[3]  U.S. District Judge William P. Johnson found probable cause to believe Defendant's first false filing with the IRS was a federal crime and ordered him not to make more false filings with government agencies.  Doc. 179 at 3.  Defendant pleaded guilty to a misdemeanor offense in connection with this filing.  Doc. 206.  But rather than learning the lesson that submitting false filings to the IRS both violated Judge Johnson's order and constituted a new crime, Defendant has persisted in filing false documents in flagrant violation of the Court's commandment.

Defendant has also lied to U.S. Probation and Pretrial Services, leading to his arrest on August 19 for violating the conditions of his release.  In this instance, Defendant provided Pretrial Services with false documents and recruited at least one accomplice to support his claim that he is employed when he is not.  *See* Doc. 243.  During an initial

---

[3] The complaint includes a remarkable seven additional instances in which Defendant filed an IRS Form 56 purporting to designate other individuals as his fiduciaries, including the Clerk of Court for the U.S. Bankruptcy Court in the District of New Mexico, both of his defense attorneys, the Secretaries of the Treasury of both Puerto Rico and the United States, and two Assistant U.S. Bankruptcy Trustees.  Exhibit 3 ¶¶ 42-48.  The United States intends to call Assistant U.S. Trustee Jaime Pena as a witness at the sentencing hearing.

appearance in this matter on August 22, 2022, Defendant claimed he could not understand the allegations in the petition for action on conditions of release. The presiding magistrate judge, the Hon. Jerry H. Ritter, did not believe Defendant and found that Defendant was "trying to obstruct the proceedings" by claiming he did not understand.

For all of these reasons, Defendant deserves a prison sentence at the high end of the range specified in his Rule 11(c)(1)(C) plea agreement. He should receive no leniency whatsoever as his disrespect for the law has continued unabated despite the repeated opportunities the Court afforded him to reform his behavior while enjoying the benefits of release from custody while his case is pending sentencing. At this point, it would be reasonable for the United States to move to withdraw from the plea agreement based on Defendant's new misconduct since entering his change of plea to guilty. However, the United States has a compelling interest in concluding this case without the time and expense of trial and Defendant can be adequately punished for his most recent transgressions by denying him the benefit of a lower sentence within the agreed-upon range.

IV. CONCLUSION

For the foregoing reasons, Defendant should be sentenced to imprisonment for a term of 63 months followed by five years of supervised release and $325 in special penalty assessments.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney
*Electronically filed 08/23/2022*

SEAN J. SULLIVAN
TAYLOR F. HARTSTEIN
Assistant United States Attorneys
Post Office Box 607
Albuquerque, NM 87103
(505) 346-7274

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23nd day of August, 2022, I filed the foregoing pleading electronically through the CM/ECF system and served counsel of record with this pleading by email.

*Electronically filed 08/22/2022*

SEAN J. SULLIVAN
Assistant U.S. Attorney